Rulon ROMRELL, Plaintiff and Respondent,

v.

W. W. CLYDE AND COMPANY, Defendant and Appellant.

No. 13801.

Supreme Court of Utah.

Feb. 5, 1975.

Stephen G. Morgan, Morgan, Scally, Lunt & Kesler, Salt Lake City, for defendant and appellant.

Phillip V. Christensen, Christensen, Taylor & Moody, Provo, for plaintiff and respondent.

MAUGHAN, Justice:

In this matter the contractor is charged with negligence which resulted in the death of a Charolais bull and a Hereford cow. The negligence complained of is the undermining of a fence, which previously had closed an area where the animals were located, thus allowing the animals to crawl under the fence, wander into a nearby field of new alfalfa, where they became bloated, and died.

The matter was tried to a jury, and from a judgment on the verdict, in favor of plaintiff, defendant appeals, seeks reversal of the judgment, and raises three points in support thereof. The points are: That the defendant was not negligent, as a matter of law, because he did the work according to the plans and specifications; that defendant was not liable, as a matter of law, because there had been a practical acceptance of the work by the state of Utah; and that the court erred in failing to instruct the jury as to what constitutes a practical acceptance.

Defendant was under contract to the state of Utah to build a road. The plans and specifications for the project called for the construction of a fence, to separate the right of way from adjoining land. It appears that the defendant last performed work on the fence at the point in question —Station 143, (so far as its erection was concerned), sometime in the fall of 1971, but that in May of 1972, it became necessary to cut a ditch, under the fence (Station 143), about three feet deep, to provide for a drain. Thereafter, in August of 1972, plaintiff discovered that his Charolais bull and Hereford cow had escaped the inclosure, and met their deaths in the alfalfa patch.

As to defendant's negligence, there are ample issues of fact raised by the pleadings and testimony to justify the matter being submitted to the jury. The plans called for a 26-inch net fence, with posts 16 feet apart, and two fence stays in between the posts. The stays were to be tied to keep the wire from sagging, and being moved up or down. The project engineer, when asked if the fence, at Station 143, had been done in accordance with plans and specifications, his answer was "I never actually looked at that particular location. I cannot tell you exactly if it had all the ties on it." And again, when he was asked if there was anything else for the contractor to do with respect to the fence at Station 143, after the fall of 1971, his answer was "I never personally inspected it, so I couldn't tell you." He further testified that the contractor tried to get the fence in "real fast so that they could go to work there."

The testimony of the state inspector was that the fence was complete in the area of Station 143, on May 22, 1972, the day the ditch was cut underneath the fence. He further testified that the fence was tied down according to specifications, and that the fence was redone in other locations, but not changed at Station 143. The inspector also stated that he had never made any acceptance of the fence, that it was not his responsibility, but that of the project engineer; that the job was not finished (at the time of trial), and that the State never accepted anything totally until the job was completed and at that time a final inspection would be made.

The testimony of plaintiff was that the fence had been loosened on both sides at Station 143, there were no ties on the bottom, and one could raise it "right up." He further testified that he didn't know the ditch had been dug until he discovered his dead cattle. Other testimony, on behalf of plaintiff was that the light colored hair of the Charolais and the red hair of the Hereford were found on the bottom strands of the fence at the location in question; that the tracks of the two animals were in evidence from Station 143 to the alfalfa patch, on the day of the event; also there were no ties on the bottom strands of the fence. These matters are necessarily within the province of the jury, and there was evidence from which the jury could find negligent construction, and no acceptance.

■ With reference to the second point advanced by defendant, "that a contractor is not liable to a third person receiving injury or damage, as a result of the negligent construction of the work, after the completion and acceptance thereof by the contractee, or owner, does not require a formal acceptance of the contractor's work, and the liability of the contractor ceases with the *practical* acceptance after completion," defendant cites in support thereof cases set out in 58 A.L.R.2d 876, 878, and Black v. Peter Kiewit Sons' Co., 94 Idaho 755, 497 P.2d 1056 (1972). Defendant's statement of the concept of practical acceptance, (above quoted) so far as it goes, is accurate, and would find applicability to the facts of the cases cited. An analysis of those cases, however, reveals that all the work contracted to be done had been done, that short of formal acceptance there had been acceptance of some kind, either by stipulation, contract, or use and the removal of the contractor from the construction site. In the instant matter, we have none of these, so, even if this court were called upon to adopt the doctrine of practical acceptance and were to look to the cases cited, for guidance, we would yet have to sustain the trial court. The defendant here was yet in charge and control of the work, and his privilege to be upon the construction site had not been terminated in any manner, nor had he received any "acceptance" from the contractee. The defendant was in practical control of the project, of which the fence was a part, until relieved of such control.

■ Reference is made to defendant's claim that the court failed to define and instruct on the concept of practical acceptance. It is to be noted that the defendant submitted no such instruction to the court, as required by Rule 51, U.R.C.P., therefore its claim of error on appeal is without merit.[1]

The judgment on the verdict is sustained. Costs to respondents.

HENRIOD, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.

1. Williamson v. Denver & Rio Grande Western R.R. Co., 26 Utah 2d 178, 487 P.2d 316 (1971); and State v. Cowan, 26 Utah 2d 410, 490 P.2d 890 (1971).